FILED

2025 Nov-21  PM 01:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **CHRISTINA WEST,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 5:24-cv-529-CLS** |
| | ) | |
| **BOARD OF TRUSTEES OF** | ) | |
| **ALABAMA AGRICULTURAL** | ) | |
| **& MECHANICAL** | ) | |
| **UNIVERSITY d/b/a** | ) | |
| **ALABAMA A & M** | ) | |
| **UNIVERSITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This action is before the court on the motion for summary judgment filed by defendant, the Board of Trustees of Alabama Agricultural & Mechanical University ("AAMU"). Doc. no. 21. Upon consideration of the pleadings, briefs, and evidentiary submissions, and for the reasons stated below, the court concludes that the motion is due to be granted in part and denied in part.

## I. ABANDONED CLAIMS

As an initial matter, plaintiff abandoned her claim of sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Count I of the Amended Complaint (doc. no. 12)), as well as her claims asserted under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* (Counts III, IV, and V). *See* doc.

no. 25 (Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment), at 2. Accordingly, defendant's motion is due to be granted as to those claims.

## II. TITLE VII RETALIATORY DISCHARGE CLAIM

Plaintiff's sole remaining claim is asserted under Title VII for retaliatory discharge (Count II of the Amended Complaint). To state such a claim, a plaintiff must show that: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. *See Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). "To survive summary judgment, the employee must present a story, supported by evidence, that would allow a reasonable jury to find that the employer engaged in unlawful retaliation against the employee." *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1311 (11th Cir. 2023). As explained below, the court finds that genuine issues of material fact preclude summary judgment with respect to plaintiff's remaining claim.

### A.    Factual Background

Plaintiff worked for AAMU on two occasions. She was first hired as a full-time bus driver, effective September 15, 2021.[1] She resigned that position on November

---

[1] Doc. no. 22-16.

16, 2021, a scant two months after beginning her first stint of employment.[2]  She contends that Marshall Chimwedzi, who was the head of the Transportation Department, made inappropriate comments to her.[3]  According to defendant, during the brief time that plaintiff initially worked for AAMU, she had attendance and scheduling issues.[4]  Note well, however, that her first tenure with AAMU is not at issue for purposes of the present motion.

Plaintiff was rehired by AAMU as a part-time bus driver during July of the following year, 2022.[5]  Thereafter, Tyrone Brown, who supervised the bus drivers, began communicating with plaintiff about her availability for work.[6]  That was an issue because plaintiff then was employed as a bus driver by the City of Huntsville until September 2, 2022; and so, her availability to work for AAMU was limited until that date.[7]  Brown told plaintiff that she would be scheduled for twenty hours during the week following the end of her employment with the City, and that he would increase her hours as a driver for AAMU thereafter.[8]

While not entirely clear, it appears that plaintiff reported to work on September

---

[2] *Id.* at ECF 19, 21.

[3] Doc. no. 22-2 (Plaintiff dep.) at 98-103.

[4] Doc. no. 22-16, at ECF 18.

[5] *Id.* at ECF 23.

[6] Doc. no. 22-8 (Aug. 12, 2022 text messages between plaintiff and Brown); doc. no. 22-8 (Plaintiff dep.) at 232-33.

[7] Doc. no. 22-2 (Plaintiff dep.), at 232-33.

[8] Doc. no. 22-9 (Sept. 2, 2022 text messages between plaintiff and Brown).

6, 2022, but she did not work her shift because too many drivers had been scheduled.[9] Plaintiff and another female driver received training to drive a new bus on September 7, 2022.[10]   Plaintiff also worked on September 8th.   She reported to work on September 9th, but again was sent home for lack of work.[11]

On September 12th, the ending time of plaintiff's next scheduled shift (*i.e.*, the shift beginning on September 14, 2022) was changed from 2:30 p.m. to 9:30 p.m.[12] Plaintiff informed Chimwedzi that, due to a previous personal commitment, she was not available to work a shift that ended as late as 9:30 p.m.[13]

Chimwedzi sent plaintiff a text message the following day, September 13, 2022, asking her to confirm whether she would work a revised schedule of 10:30 a.m. to 9:30 p.m. on September 14th.[14]   Plaintiff reminded him that she was not available to work as late as 9:30 p.m. on any date during the week beginning on September 14, 2022, but told him she could work her originally scheduled 10:30 a.m. to 2:30 p.m. shifts.[15]   Chimwedzi responded:  "No you either have to work as assigned or you don't."[16]   Plaintiff replied: "So you're taking me off tomorrow too because I can't

---

[9] Doc. no. 22-2 (Plaintiff dep.), at 134.

[10] *Id.* at 136-37.

[11] *Id.* at 137-39.

[12] Doc. no. 22-1 (Chimwedzi dep.), at 84.

[13] Doc. no. 22-2 (Plaintiff dep.), at 173-74.

[14] Doc. no. 22-10 (Sept. 13, 2022 text messages between Chimwedzi and plaintiff).

[15] *Id.*

[16] *Id.*

work a shift I wasn't available for?"[17]  Chimwedzi responded: "Either you work as scheduled or not."[18]  Plaintiff testified in deposition that two male employees refused to work the night shift, but were not taken off the schedule as she was.[19]

On September 14, 2022, plaintiff sent an email message to Dr. Lynda Batiste, who was AAMU's Interim Vice President of Business and Finance.[20]  One of Dr. Batiste's duties was to oversee the Transportation Department.  Plaintiff asked Dr. Batiste to call her "to discuss the events that have recently taken place in the transportation dep[artmen]t."[21]  Suggestively, she stated that the topic she wanted to discuss was "of a sensitive nature."[22]

Chimwedzi held a meeting with the bus drivers on September 15th.[23]  During the meeting, he asked the drivers to complete a form indicating their availability. Plaintiff requested that Chimwedzi "add an addendum that . . . everyone had to be available for any shift, and that anybody that became unavailable would lose their hours," like she had.[24]  Plaintiff did not submit an availability form to Chimwedzi

---

[17] *Id.*

[18] *Id.*

[19] Doc. no. 22-2 (Plaintiff dep.), at 167-69.

[20] Doc. no. 22-11.

[21] *Id.* (alteration supplied).

[22] *Id.*

[23] Doc. no. 22-2 (Plaintiff dep.), at 142.

[24] *Id.* at 141.

during the meeting, but did so the following day.[25]

Around that same date, plaintiff met with Dr. Batiste.[26]  Plaintiff testified during deposition that she "discussed the situation with [Chimwedzi] taking [her] off the schedule and taking [her] hours indefinitely."[27]  She also told Dr. Batiste that Chimwedzi communicated differently with men and women, and that he spoke to women in a condescending tone.[28]  Plaintiff told Dr. Batiste that "the way that . . . Chimwedzi handles the schedule is different — between men and women."[29]  When asked about that meeting during deposition, Dr. Batiste testified that plaintiff talked to her about plaintiff's "issue with scheduling conflicts," but she did *not* complain that women were required to work night shifts while men were not.[30]

On September 21st, plaintiff sent another email to Dr. Batiste, in which she stated:

> Hello, Dr. Batiste,
>
> I'm reaching out with an update.  Since we last spoke, that same day last Friday evening, as I was leaving for the day, Tyrone [*i.e.*, Tyrone Brown, plaintiff's supervisor], advised me that I would not be put on the schedule until I signed the availability form.  I did sign it, however, I was then told I am to remain part time and as such will not be able to get

---

[25] *Id.* at 203-04.

[26] *Id.* at 215-16.

[27] *Id.* at 217 (alterations supplied).

[28] Doc. no. 22-2 (Plaintiff dep.), at 220.

[29] *Id.* at 217-18.

[30] *Id.* at 29-30.

more than 25 hrs a week. I said ok and left.

Sunday, Tyrone called me to tell me what my schedule would be for this week and yes, initially it was 20 hrs. And NO ONE has been scheduled an evening shift this week. My schedule was then changed again adding an additional 6 hrs. I have not said anything to Marshall [Chimwedzi] nor has he said anything to me. This is disturbing as per our conversation; I left a full time job with benefits that I need due [to] a medical condition and now am being told that not only will I NOT be full time to receive said benefits, but that I'm also being restricted in the number of hours I can work. I feel like I'm being forced to quit. How should I proceed?

Doc. no. 22-13 (alterations supplied). The record does not contain a response from Dr. Batiste.

The following day, plaintiff forwarded a copy of her previous email to Dr. Batiste with an additional message, which stated:

So sorry to bother you again . . . It would appear as though the drivers have appointed me to contact you in regards to meeting specifically with you. I am honestly not sure what this meeting is about. But I've been asked to please request a drivers ONLY meeting with you. If that is possible what ever the date and time I will relay to the group. Thanks in advance for your time.

*Id.* Dr. Batiste responded to the latter message, and asked plaintiff how many drivers were in the group. Plaintiff replied that "there's 4 or 5 for sure."[31] There is no indication in the record presented to this court whether a meeting of the group of drivers and Dr. Batiste was ultimately held.

---

[31] Doc. no. 22-13.

During the following weeks, the number of hours for which plaintiff was scheduled decreased from 35.65 for the week of September 26, to 17.68 hours for the week of October 3, 2022, and to 9.82 hours for the week of October 10, 2022.[32]

On October 17th, plaintiff encountered Dr. Wims (President of AAMU) on campus.[33]    Plaintiff introduced herself and asked to speak with him about the Transportation Department.[34]   Dr. Wims told plaintiff to direct her concerns to Dr. Batiste.[35]  The next day, plaintiff sent another email message to Dr. Batiste, in which she stated:

> Hello Dr. Batiste, and good afternoon.  I happen[ed] to run into Mr Mims [*sic*] and I said I would like to speak with him.  He asked was it in reference to what's going on in our office.  I said yes, and he redirected me to you.  As per my last email to you, I spoke of my being denied full time status.  Which has not changed.  I have been completely available for work.  I have been on time, in uniform and done whatever I have been asked to do.  I receive great feedback from both the students and faculty I've worked with.  So, as you can see, I love my job.  I just am trying to be treated fairly.  I am also willing to work in the office when needed, and provide training to other drivers as I have experience with both.  I had also been working with Tyrone to better streamline the training/driver development.
>
> I want to be at AAMU for the long term with no issues.  So I'm doing what I can to make the situation better.
>
> Thank you for your time.

---

[32] Doc. no. 22-1, at ECF 64-66.

[33] Doc. no. 22-2 (Plaintiff dep.), at 226,

[34] *Id.*

[35] *Id.*

Doc. no. 26-4 (alterations supplied).  Dr. Batiste did not respond to the email.

However, she testified during deposition that she "would have had a conversation, of

course [,] with Marshall [Chimwedzi] in regards to anything received."[36]

The following day, October 19, 2022, at the conclusion of plaintiff's shift,

Chimwedzi gave her a letter terminating her employment.  The letter reads as follows:

> This letter constitutes official notification that your part-time
> employment in the Department of Transportation at Alabama A&M
> University ("University") end[s] effective October 19, 2022.  Your final
> AAMU paycheck will be issued in October payroll and it will include
> payment of your salary through the end of the [*sic*] October, 2022.  You
> are required to turn in all keys, badges, and University equipment to me
> prior to your departure.
>
> I wish you well in your future endeavors.

Doc. no. 22-14 (alterations supplied).  The letter bore only Chimwedzi's signature.

Even so, Chimwedzi and Batiste testified in deposition that Batiste approved the

termination.[37]

## B.    Issues of Material Fact

In view of the foregoing, the court finds that there are far too many genuine

issues of material fact for this matter to be resolved on summary judgment.  For

example:

---

[36] Doc. no. 22-3 (Batiste dep.), at 42 (alterations supplied).

[37] Doc. no. 22-1 (Chimwedzi dep.), at 129; doc. no. 22-3 (Batiste dep.), at 50.

- **Whether plaintiff engaged in protected activity.**

Plaintiff testified in deposition that she complained to Dr. Batiste in a private meeting that Chimwedzi treated men and women differently with respect to their schedules. However, Dr. Batiste testified that plaintiff complained about scheduling issues, but not about discriminatory treatment with respect to scheduling. Accordingly, there is an issue of credibility as to whether plaintiff engaged in protected activity.

- **Whether the decision to terminate plaintiff's employment pre-dated any protected activity.**

AAMU contends that Chimwedzi decided to terminate plaintiff's employment on September 13, 2022 — the date she stated that she was not available to work extended shifts ending at 9:30 p.m., and three days before she allegedly complained to Batiste about Chimwedzi's discriminatory conduct. Chimwedzi's deposition testimony is the only evidence of the date of his alleged decision to terminate plaintiff. However, plaintiff was not actually terminated until more than a month later, on October 19, 2022 — the day after plaintiff notified Dr. Batiste that she had attempted to speak with Dr. Wims about her concerns — all of which tends to indicate that Chimwedzi's pants may have been on fire during his deposition testimony.

Even so, AAMU attempts to extinguish any flames and explains the delay by stating that, after Chimwedzi made his alleged decision to terminate plaintiff, he was

required to consult with the Human Resources Department and, ultimately, to obtain the approval of Dr. Batiste, which occurred on some unknown date prior to October 19. There is no evidence in the record of the date upon which he consulted with the Human Resources Department. Bottom line: regardless of this court's obvious incredulity, these are issues of material fact.

- **Who was the decisionmaker?**

In its initial brief, AAMU argues that Chimwedzi was *the* decisionmaker, and that he made the decision to fire plaintiff on September 13, 2022.[38] In AAMU's response to plaintiff's request for admissions, however, the University *denied* that Chimwedzi was the decisionmaker.[39] Chimwedzi testified in deposition that he did not know that plaintiff had complained to Dr. Batiste about sex discrimination, and that plaintiff did not complain to him that she believed that women were treated less favorably than men in the Transportation Department.[40]

Dr. Batiste initially testified during deposition that she discussed plaintiff's scheduling conflict with Chimwedzi, but later testified as follows:

> Q. When you would receive a communication from somebody like Ms. West and then you would go to talk to Mr. Chimwedzi, would you reveal the identity of the person who sent the complaint about

---

[38] *See* doc. no. 23 (Defendant's Brief in Support of Motion for Summary Judgment), at 19; doc. no. 27 (Defendant's Reply Brief), at 7.

[39] Doc. no. 26-2 (Defendant's Responses to Plaintiff's Discovery Requests), at ECF 3.

[40] Doc. no. 22-1 (Chimwedzi dep.), at 98.

the department to you?

A.     No, no.

Doc. no. 22-3 (Batiste dep.), at 60.

It is undisputed that Dr. Batiste approved Chimwedzi's decision to terminate plaintiff's employment.  Dr. Batiste stated that Chimwedzi told her that he was seeking approval to terminate plaintiff's employment because of "a lot of scheduling conflict and her refusal to be amenable to the schedules that he provided to her."[41] She did not recall whether Chimwedzi provided her with any documentation to support plaintiff's termination.

If a jury finds plaintiff credible with respect to her allegation that she complained to Dr. Batiste about Chimwedzi's discriminatory conduct, it also could find that Dr. Batiste at least approved Chimwedzi's decision to terminate plaintiff's employment with knowledge that plaintiff engaged in protected activity.

• **Pretext**

Chimwedzi's letter terminating plaintiff's employment did not provide a reason for her termination.  Chimwedzi testified in deposition that plaintiff's employment was terminated due to her "[j]ust not being available to work and having problems

---

[41] Doc. no. 22-3 (Batiste dep.), at 45.

with the scheduling. She's not available."[42] Dr. Batiste confirmed in deposition that Chimwedzi told her that was the reason.[43] However, plaintiff points out that AAMU produced only two schedules from her 2022 employment. Comparison of one of those schedules with plaintiff's timecards showing the hours that she actually worked does not support Chimwedzi's justification for plaintiff's termination.[44]

### III. CONCLUSION

In sum, genuine issues of material fact preclude summary judgment on plaintiff's claim of retaliation under Title VII, and the motion is due to be denied as to that claim. A separate order consistent with this memorandum opinion will be entered contemporaneously herewith.

**DONE** this 21st day of November, 2025.

_____

Senior United States District Judge

---

[42] Doc. no. 22-1 (Chimwedzi dep.), at 123 (alteration supplied). Notably, the availability forms completed by the bus drivers during the September 15, 2022 meeting with Chimwedzi were not produced by AAMU.

[43] Doc. no. 22-3 (Batiste dep.), at 45.

[44] *See* doc. no. 25 (Plaintiff's Response), at 25.